Your Honor, this is the first case of the morning, called 2-11-968, Chief of State of Illinois v. Zachary Isaacman. On behalf of Mr. Isaacman, Ms. Kim DeWitt, on behalf of the people of the United States of America. Ms. DeWitt, you may proceed. Good morning, Your Honors. May it please the Court. Counsel. Zachary Isaacman was convicted of aggravated battery with a firearm and aggravated UUW. If John Paul Carroll, his attorney, had done his job, though, not only would he have provided the defendant with a viable, credible, corroborated defense, but he also would have been able to shut down many of the improper prosecutorial comments that were made in this case that so prejudiced the defendant's right to a fair trial. Now, in our briefs, we've separated the prosecutorial misconduct from the ineffective assistance of counsel, but I hope in this argument this morning to show how the prejudice from the ineffective assistance was exacerbated by, it exacerbated the prejudice from the prosecutorial misconduct, that these issues are really intertwined. So let me ask you a threshold question. What is your response to the trial judge's finding that trial counsel's courtroom performance outweighed any sensible or alleged inadequate preparation? How do you respond to that? Mr. Carroll had a theory of defense, and he put a lot of argument on, and he told a lot of stories. But that arguments aren't evidence. The jury's told that opening statements, closing arguments aren't evidence. Here we had three witnesses who gave statements to the police immediately after the shooting who said that, who corroborated the defense theory that Mr. Mulder was the aggressor in this incident, not Mr. Isaacman. And those statements were given to Mr. Carroll in discovery, and they sat in a drawer. He never interviewed the witnesses, is that correct? No, he testified under oath, both he and his co-counsel, that they never interviewed them, never talked to them, he said, much less called them, he said that it wouldn't have been useful. That's entirely inconsistent with his defense at trial, which was that, and he repeatedly said this, that Mr. Mulder was the aggressor, that he was a bully, and that he was a mean drunk. Now, in Tolliver v. Pollard, the Seventh Circuit, a case cited in my brief, the court said that when it's a swearing match between two sides, the failure to put on useful corroborating evidence is not strategy, it's deficient performance. And let me ask you, has Mr. Carroll made a decision to go with self-defense, correct? Mm-hmm. That's what he said in the opening statement. I'm sorry. Self-defense in pulling the gun, then accident in how the gun discharged. He also announced in opening statements, and he sort of demonstrated a sweeping motion that the alleged victim, in a sweeping motion, with a knife out. Was there anyone who stated that? Was there any evidence to support that theory? Absolutely no evidence of that. There was no testimony at trial, and he didn't reveal what the source of that evidence would be, and it couldn't have been from his client because he admitted at the Krenkel hearing that he didn't even talk to his client between the time he was retained and the third day of trial, and by that time, opening statements had been made. Well, he makes an opening statement, the evidence is going to show that the victim was waving a knife, and the defendant gets up on the stand and doesn't say anything about seeing a knife. Exactly, and that was very prejudicial because the prosecutor used McCarroll's misstatement to accuse Mr. Isaacman of fabricating his defense. So that, again, that's where the prosecutorial comments and the ineffective assistance intertwine to create more prejudice to the defendant's right to a fair trial. Now, the source of Carroll's, in fact, Carroll said in closing argument, after the prosecutor pointed this out, he said, well, he told the jury that was my opinion. Well, opening statement is a time for stating what the evidence is going to be, not what your opinion is. And furthermore, if the source was a prior statement of the defendant, which no one ever said it was, the prosecutor would have impeached the defendant when he was on stand at trial. So it's clear that there was no basis for him saying what this was. We don't know where he pulled that out, but it was the defendant who paid the price when the prosecutor accused the defendant of making up his defense. The jury was instructed that neither opening statement nor closing argument was evidence, correct, and anything that was not based on the evidence should be disregarded. Right, but as I pointed out in our brief, in People v. Wheeler, the Illinois Supreme Court stated that when, and in fact, several objections were sustained, but the salutary effect of sustaining objections is lost when a prosecutor continues making the same arguments. And in our brief, we set out exactly how the prosecutor kept making the same improper comments, even after repeated objections were sustained. You said earlier in your argument, maybe right at the beginning, that there was a viable defense that he did not put forth. What was the viable defense that Carroll didn't put forth? Exactly, that Mulder was the aggressor. He came at the defendant. He was the witnesses who were not called. Mercedes Lawson said she saw Mr. Isaacman retreating as Mulder kept advancing. She heard the defendant say, I have the right to use it if you attack me. Then she heard a shot. Mark Snyder heard, do you want to fight? We don't know who said that. Saw the defendant retreating towards the median. Mulder appeared to be the aggressor. He continued to come towards the defendant as the defendant staggered backwards. Then the defendant pulled a gun. Then he heard a shot. Sarah Martin heard arguing, looked outside, saw the defendant retreating while Mulder appeared to be aggressing forward. Heard defendant say, I have a right to shoot if you attack me. So when the police came to the scene and talked to witnesses, the witnesses who told the police that Mr. Isaacman was the aggressor, the state put them on the stand. The witnesses who told police that Mr. Mulder was the aggressor never – What was the defense, though? What's the defense that he left on the table? You said that Carroll didn't put forth a viable defense. Are you still saying that it's a self-defense that you're talking about? It was self-defense in pulling the gun. And then there was a struggle that he did not intend to shoot him that the gun fired. But he argued that. He argued it. But the defense theory became dependent on Mr. Isaacman's testimony that Mulder was the aggressor. But the prosecution in closing argument told the jury that the defendant had fabricated his defense for the first time after hearing all the other witnesses testify. So if these three witnesses had testified that Mr. Mulder was the aggressor, then the jury would have had corroboration that Mulder was the aggressor and not Isaacman and restored the defendant's credibility. And he was the only one who testified in the defense. How does self-defense lie where not one witness – I'm sorry? How does self-defense lie where there's not one witness who's testified that they saw the victim with a weapon, there's not one witness that testified other than the defendant and the victim that there was a struggle, that they were even in contact with each other. Every witness saw them separated by an area. I think the closest they got was two feet, according to one of the witnesses, that was not called. And then the defendant, you claim, takes out a gun and shoots the guy. Well, Mr. Mulder said at trial that there was a struggle. I know, but that – and he was impeached. Well, he didn't say that before trial, correct? Right. So, I mean, we're talking about – I mean, what I'm saying is, you know, we can't be a Monday morning quarterback here. The defense attorney, you know, you laid out some shortcomings, certainly. But if you're looking at – if the defense attorney reviewed all the police reports, there's not anything in the police reports that talks about a struggle. Do eyewitnesses always see exactly the same thing? No. And, in fact, attorneys argue, if everybody tells the same story, there's something wrong. However, when the main – we don't even get to deciding whether or not the gun went off by accident until – the first point is that Mulder came at the defendant, and that was the central point of the defense. Who was the aggressor? And the state repeatedly accused the defendant of fabricating this claim. And if the witnesses had been able to come in and say, yes, he came after him. And more than one witness said that – my client said, I have the – basically, I have the right to defend myself if you attack me. So that is – that was the central point of Mr. Carroll's argument. Let me see if I can call it the essence of what you're saying. You're not criticizing Carroll for going with the self-defense theory? As I understand it, you're criticizing him because he went with self-defense and yet had evidence to corroborate and strengthen that as well as be consistent with the defendant, and he chose not to put those witnesses on. Is that sort of what you're saying? And he not only – by not putting them on, not only did he not provide corroboration, but also in terms of how the prosecutor conducted their case and their closing arguments. Now, the prosecutor said when the eyewitness testimony matches the physical evidence, that equals proof beyond reasonable doubt. Well, besides defining reasonable doubt, which you're not supposed to do, if these witnesses had testified for the defense, that would have – they wouldn't have been able to argue that because the eyewitness testimony would have been fractured. And also the jury was instructed that an initial aggressor has a duty to retreat, which is correct, but – and the prosecutor hammered this point in closing argument, telling them Isaacman could have run away from Mulder rather than engaging him. But if Martin, Lawson, and Snyder, those three witnesses, had testified that Mulder was the initial aggressor, the defense would have had a strong counterpoint to this argument. The state also called the defendant a mad gunman out that night looking for a fight. Well, if defense witnesses had testified that Mulder was the aggressor towards him, then this would have knocked the sails out of that argument also. You know, it's not unusual for prosecutors who make closing arguments to sometimes cross the line. An objection sustained, the jury is instructed to disregard, which is generally considered under the case law sufficient to cure the problem. But you seem to be saying that even if that was the case, generally speaking, it's heightened here because of the lack of the evidence. Right. Right. Is that the prejudice you're honing in on too? Yes. Because you've got two components, obviously. It was a combination. The combination. Also, the prosecutor threw a red herring into this case in rebuttal in trying to strengthen its argument that the defense was fabricated by bringing in this Officer Anderson who said that she overheard part of the conversation that she wasn't really paying attention to, that the defendant said after he was arrested, I was just jumped by three people. And then she admitted she didn't know what the context was. She wasn't paying attention. She was searching for, I guess, evidence. The officers who were a party to the conversation, they never testified to that. And in an open statement, when Carroll started to talk about what was said by the defendant, the state objected. So we don't know if that's exactly what he said. And we also don't know if that's all the defendant said. But the prosecution used that rebuttal testimony right at the end of the case, went straight into closing argument, and said, this shows the defense is fabricated. Now, this is a very... I want to get back to one other point, if you don't mind. Was your client, even if there was all this evidence of the victim being the aggressor, was your client justified in using deadly force? Would self-defense, would that defense be viable? Yes, because according to Mr. Isaacman, Mulder, the defendant was at the bus stop median. He swore about his cell phone being dead. Mulder, I guess, figured he was talking to him, starts yelling at him. I know the facts. I know the facts. What justifies deadly force? Because Mulder stormed out. If he has a knife, I agree with you. If he has a knife. If we agree, if the jury believed your client that the victim had a knife, then deadly force definitely would work. And my client believed that Mr. Mulder had a knife. But none of these other witnesses corroborated that. But if a person, as Carol argued, you don't... At the time when Mulder is struggling, is grabbing the gun, he's putting his hand in his pocket, and he had already made statements about having a knife. Then it's reasonable. You don't have to wait until actually the person pulls a gun out or a knife out. A person can use self-defense against just physical violence without a weapon. And again... I mean, deadly force. We're talking about deadly force. Yes, sure, he could have punched him in the nose. If he said, I'm going to punch you in the nose, you could punch him in the nose. I understand that. But to pull a gun out and shoot somebody takes a little higher level. He pulled the gun, he never said, in self-defense, he never testified that he shot him in self-defense. So your point is it was the self-defense justifies displaying the weapon, perhaps even pointing it in the victim's direction. Correct. But that the firing of the gun is in the context of an accidental shooting. Correct. Okay. Now, the defendant's attorney had all these police reports. Why is not his decision trial strategy? Because he said it was strategy, but his entire argument to the jury was that Mr. Mulder was the aggressor and that he was a bully and that he was a mean drunk, and therefore he came at Mr. Isaacman, not the other way around. So if you have witnesses who are saying Mr. Mulder was the aggressor, not Mr. Isaacman, and the state has witnesses who say, no, Mr. Isaacman was the aggressor, well, you have to the bottom line is he should have called them because they were consistent with his theory. Yes, and a theory doesn't go very far unless you have evidence. And when you have the prosecution accusing the defendant, who's the only witness for the defense, of fabricating his stories, then the failure to offer corroboration to prove that he wasn't making it up is ineffective assistance of counsel. Thank you, Your Honor. We ask you to reverse. Mr. Bernard? Good morning, Your Honors. I apologize in advance if I start coughing. I have a pretty bad cold going. I guess I would start at the ineffectiveness claim. The counsel talks about the three witnesses that the defense counsel didn't call. The difference between this case and the cases she cites, though, is in the cases she cites like Toliver and Mosley, in those cases, defense counsel never had any idea what the testimony would be of those witnesses. There was no discretion because those two counsel never went and actually found out what those witnesses that were never called were going to say. Here we have the police reports. In the police reports, defense counsel decided because of whatever strategy, he used his discretion. That's the difference. That's trial strategy. Whether you agree with it or not, or whether I agree with it or not, it's still his strategy. Let's look at that a little bit further. I think you can make an argument if they would even talk to the witnesses. It's still questionable trial strategy. But I see the distinction you're drawing between this case and the other cases, and it is a legitimate distinction. But as we've been dancing around here this morning, if your defense, your only defense is self-defense, and you have three witnesses who would support and corroborate the defendant's testimony, why would it be trial strategy not to call the only witnesses that support your case? Well, they weren't the only witnesses that supported his case. I'm talking about the aggressor theory that you started doing. Well, you have to remember there were witnesses called by the state who suggested, Chris Nakes said that he saw the victim going towards the defendant. And I think there was some other testimony where there was testimony, yes, I don't think there was any doubt that the victim approached the defendant. And there's testimony there. Is this other three witnesses who – Are you suggesting that the defense is effective assistance if he simply relies on the state's witnesses and does not call witnesses that would corroborate the defense? No, Your Honor. But what I'm saying is there was other evidence there that's saying that wasn't the key evidence, is that the victim was walking towards the defendant. The key evidence was the victim's testimony who said that the victim told him, well, you're going to be funny with a knife sticking in your ass, or I'm going to cut the shit out of you, or other testimony. I think that was a strong testimony. The fact that he was threatening the defendant and put his hand in his pocket, the defendant thought maybe he had a knife. Yeah, but who did that come from? The defendant, right? It came from the defendant. But if you have witnesses who are going to corroborate and support that and you choose not to call them, again, how is that a matter of cross-examination? Well, the first thing is that one of the witnesses, which they actually called at the Krankel hearing, the judge, the trial judge, said this witness wouldn't have helped the defendant at all. In fact, it would have hurt the defendant. And there was nothing more in the other two defendants when the public defender's investigator looked at it and said they were going to say the same thing as they said in the police reports. So there was really no advantage. The defense counsel, for whatever reason, was using his discretion. Now, certainly with the case of the one witness they got in and he or she actually testified, the trial judge said, well, yeah, this would have hurt the defense case. So I think that kind of shows that maybe his strategy was not up. We're not, you know, hindsight is 20-20. Now we're wondering, but there are reasons he had this particular strategy. Well, as Justice Burke points out, it is a little bit difficult to sell self-defense under normal circumstances where the victim doesn't display any handicap. And the defendant himself says he never saw a knife. So the only way self-defense is going to lie is on this theory that the victim was the aggressor and maybe you don't actually have to wait until a weapon is produced or fired before you respond. So if you don't get any evidence of the victim being an aggressor, you have no self-defense, do you? I think that's true, but there is evidence in the record that the victim was the aggressor. I mean, well, number one, the victim said when he testified that he reached for the gun and pushed it down, that he was close enough, which would indicate there was some aggression. All the witnesses testified that there was some yelling and screaming at each other. So you're saying it's no big deal. The evidence is already in there. So why produce any other cooperative evidence? Because the state's witnesses have brought it in? Well, no, I'm not saying that. What I'm saying is I think the testimony that was put in was much better than the three witnesses that defense counsel decided that to bring up. You could also, the witnesses who, those other three witnesses I think were much higher up in the tower, they just weren't as good of witnesses as the other ones and as defendant. Now, I don't know what the communication was between the defendant and defense counsel, but... According to the record, there was virtually none since the day that he was retained until the trial, right? Well, that wasn't quite... Didn't Mr. Carroll acknowledge he hadn't talked to him for like nine months? I think that's true, yes. Now... There's some water, counsel, if you would like. Thank you. I think I can get through. The best testimony, this was not a strong case for defense, okay? We're looking at it now after the fact, what was happening. Defense counsel didn't have much to go on. As the trial judge said, he did a great job at trial. He was aggressive, he objected, he got stuck. Counsel, can you ever be effective in defending someone who you have not interviewed? Yes. When you have police reports and you think that that information is not going to help your case for whatever reason, I can't get in the mind of this attorney, but certainly, yes, there was a reason. Now, the fact is, is one of it is... I'm sorry. I'm talking about not interviewing your own client. Pardon? Not interviewing your own client. Well, his co-counsel interviewed the client. I mean, there was co-counsel. They certainly communicated between... Never went over your testimony with your client? Never went over the testimony that your client was going to give? Get up an opening statement and talk about a sweeping gesture that's nowhere in the police reports? I don't know if that's completely clear from the record that he didn't communicate at all with his... I think he did talk with his client. I think the testimony is the client said, well, he didn't communicate with me enough. His co-counsel also communicated with the client. I think that's important. I think those people, you know, of course, as you're a defendant, your case is the most important, but here was a very seasoned veteran defense counsel who has done a lot of trials. He knows what he's doing. He has co-counsel indicating what the evidence was. The trial judge said it was obvious he was well prepared by the trial. Well, let me ask you this. Why did he give up and give an opening statement, you know, outlining the self-defense theory, talking about a knife being produced in a sweeping motion when his client never saw a knife? Wouldn't he or shouldn't he have learned that if he had talked to his client? All I can say is he may have misspoke. Opening statements are not evidence. The jury's instructed that way, but the fact is also his client, and he could have misspoke and said my client thought he had a knife. I mean, in this situation, obviously, defendant was scared, victim was scared. Supposedly, both the victim and the defendant said, you know, they were yelling at each other. All the other evidence indicates that. There was some aggression. There was people moving towards each other. It was dark out. You can have a small knife in your hand, and you can make that movement and think you have a knife. But isn't the point that the defendant never said that? So where did counsel get that idea from? He may have gotten it from the defendant himself. The defendant may have testified differently than what he told his attorney. There's nothing in the police reports that ever no witness indicated they saw a knife anywhere, correct? Correct. Well, that is not quite correct because the defendant had a knife in his pocket. He did? He did. He had a knife, an extra magazine of ammunition, and a gun. But no knife was ever recovered? Knife was recovered from the defendant. Not talking about the defendant. That certainly has nothing to do with counsel's statement. From the victim? No. And counsel would have known that had he read the reports, correct? Yes, yes. But the fact is you can still say, you can still anticipate that someone has something in their hand if they're going like this, or if they're saying, I'm going to cut you, or you're going to look funny with a knife sticking out of your ass. I think you maybe can say, well, maybe this person does have a knife and the knife's in the pocket, or if it's a small knife or something, a switchblade, it can be in someone's hand and you still can't see it. I actually think that is probably a proper, or you could glean that from the evidence. His opening statement was geared entirely to self-defense, being the defense attorney, correct? Correct. He didn't mention during opening statement anything about a struggle over the gun, correct? I don't remember, Your Honor. Well, that would be another indication other than him saying that there was a knife displayed, him saying that there was a sweeping motion with the knife, him not mentioning anything about a struggle over the gun. Those are all huge indications that he had no contact with his client about the facts of the case before he gets up and makes an opening statement. Are you saying that's effective representation of this defendant? I'm saying the trial judge, and I wasn't there, I'm saying the trial judge said this counsel was very effective. She was the one who saw him minute by minute at the trial and said he was very effective. The fact that he made a statement, sir, his opening argument wasn't as effective or done as well as we think it should have been, I don't think that rises to, certainly to an effectiveness. You know, I don't think, especially in this case, we're trying to, we're expecting in hindsight that the trial counsel to be perfect. Well, he wasn't, but there's certainly with this evidence here, there was no prejudice, no matter what he said in the opening argument. The fact is, is the evidence. I mean, the physical evidence, all the witness evidence. I don't care what his opening argument would have been. Defendants still would have been convicted. So we may not agree with his strategy, but certainly his trial was not prejudicial. It's just a strategy if you don't interview witnesses, you don't talk to your clients, and you present a statement, an opening argument that isn't based on anything anywhere in the reports. Well, again. I'm struggling to understand the strategy there. Well, again, your Honor, whether he communicated with his client or not, he had co-counsel that communicated. So I don't think that is really a correct statement. The other thing is, is he may have, this was a difficult case to defend. And I don't feel in any way the way he conducted these proceedings, the trial proceedings, I think he gave this defendant the best defense this defendant could have given the evidence, the physical evidence. And defendant's statements, even before trial, like I said, it wasn't a perfect defense, but it certainly wasn't prejudicial considering the weight of the evidence. Are there any other questions, Your Honor? No. Thank you. Thank you very much. Mr. Witt. Your Honors, if this had been a post-conviction petition filed by Mr. Isaacman years later saying, you know what, my attorney was ineffective because he didn't call these eyewitnesses who were good friends of mine, I don't know what their last names are, I don't know where they were. But they saw it, and here's their affidavits. There would be a question about whether or not, A, how credible these witnesses are, and B, did his attorney know at the time, contemporaneous with his representation, that these witnesses existed and they would have been helpful. But here, this was minimal heavy lifting for Carroll. All he had to do was get the police reports. The police found the witnesses. He didn't have to beat the bushes. All he had to do was contact the witnesses and say, is this your statement? Is that what happened? Here's your subpoena. There would still be an issue of prejudice. And let's assume ineffective. Let's assume ineffective representation. The defendant was not charged with pulling the gun out. I mean, a lot of these things have to do with who was the aggressor. And counsel's correct. Two of the three witnesses that did testify had the victim going toward the defendant during this incident. But the defendant's not charged with pulling the gun out. So he's charged with shooting the person. Now, you're saying that the reason, you know, it's reasonable to show the reason he pulled the gun out was because this person was coming toward him and threatening him with a knife. I understand that. But ultimately, that's not the defense that was really relied on in the end, and that's not the defense that you're actually relying on. You're relying on basically a lack of mental state, an accident, correct? For the shooting. Yes. We have the ineffective assistance argument, but we also have the prosecutorial misconduct argument where the prosecutor attacked my client's credibility and accused him of fabricating his entire story. And the jury struggled with what really happened that night because they asked, does knowingly have anything to do with intent? Because as the parties were arguing, how did this gun shot occur? Was it what really happened that night? I don't think you can look at any of the witnesses, either the ones that weren't called or were called, and say that's exactly what happened. But the jury had to put everything together, and they struggled with that. And when you have a prosecutor who is denigrating the only witness who's saying this is what happened, and also his story was consistent on several key points with Mr. Mulder's own testimony, which the state says to the jury, when you're deciding whether our evidence equals proof beyond reasonable doubt, don't include Mulder in that. Well, so it's a combination of the prosecutor shifting the burden of proof, accusing the defense of fabricating the defense, defining what the burden of proof is, and then selecting what evidence they want to put into that equation of what equals proof beyond reasonable doubt. And then you have a defense attorney who is not communicating with his client. Co-counsel met with the defendant once more than in June. This trial was in December. There's no evidence of what she actually talked to him about. And my client's mother testified that what they knew from Mr. Carroll was he was interviewing witnesses, and the defendant was going to testify. That's it. And as far as the relying on the state's witnesses, the state's witnesses said that Mulder was the aggressor. Now, whether or not he walked over there, that's much different than saying he was aggressing forward as Mr. Isaacman was stumbling backward, saying, I have the right to shoot you if you attack me. Now, granted, you know, it's 3 a.m. It's outside a dorm. It's dark. It's the middle of winter. There's it's Thirsty Thursday. Some people, you know, the state's case wasn't this was a winnable case for the defense, not the state. They had a complaining witness who told two different stories. They had one witness who said he was in an altered state of mind. So who knows what he saw? You know, all to say that it is effective strategy to get police statements of witnesses who corroborate the central centerpiece of your defense and not call them or even talk to them or even talk to your own client. That's not strategy. Thank you. Your Honor. So this will be taken under advice of the decision.